Solutions Group, Incorporated. We'll hear first from Mr. Kurt Hesse. May it please the court. Blackjack dealers, croupiers, bartenders, waiters, cable tv repairmen, and cowboy's tending livestock. Those are all workers who, according to the district court, were seamen exempt from the maximum hour requirements of the Fair Labor Standards Act if they performed work on seagoing vessels. The law though is decidedly different. Section 13b-6 of the Act exempts only those employees actually employed as seamen. May I ask that the district court did not have the benefit of the Adams case and should this case be remanded for the district court to look at this case in light of the standards that the court has articulated? Is that what we should do here? Your honor, Adams certainly is informative and it helps the the arguments. Is it controlling? Yes, judge, it is. If it's controlling and the district court didn't have the benefit of it, should we just remand and say please take a look at this case that you didn't get to see? Ordinarily, I would agree with you, your honor, but... Well, I'm not saying that's my point, that you don't need to agree or disagree with me. I'm just asking that question. The case should absolutely be remanded, judge, but the arguments, for example, the Adams case was one of our cases and I remember it. I remember it too. I know you do, judge. Given the propensities of this particular judge, the question occurs to me, will that bring about a fair and just resolution of the problems of the state? I don't think so, your honor, because the judge criticized the reasoning in Adams and other semen exemption cases. In fact, I think he characterized him as idiotic. Well, that doesn't mean they won't follow it. I mean, I don't, that seems very personalized and inappropriate for perhaps you, but go ahead. Your honor, we, at the scheduling conference, the judge asked about what the law was and I explained to him what my view of the law was based on this court's jurisprudence and he said, that's fine, but it's idiotic and I'm not going to follow it. Those were his words on the record at the scheduling conference. When I was a lawyer and a judge would say that, I would just say yes, your honor. Which is essentially what I'm saying. I'm not sure what you can say to that. But nonetheless, perhaps the court explained it well enough in this new opinion and so it doesn't seem that way anymore to the district court or whether it seems that way personally, the district court's not going to not follow the law. We should not assume a judge would not follow the law. Yes, your honor, I agree and I don't have any indication and I've never been in the business of predicting anything that a judge would do and so I don't have any senses. Can you answer my question, the first one? I know we got a little sidetracked. Should we try to have a chance to apply the governing law? Yes, your honor, the court should remand, but Adams didn't change the landscape that dramatically. It relied on decades old precedent, for example, Coffin v. Blessee Marine. It relied on Dole v. Petroleum Treaters, a case involving cooks on board jackup vessels who serviced offshore oil and gas rigs, who this court said were likely non-exempt. Is that Martin? That's Dole v. Petroleum Treaters. Martin v. Bedell was another case involving cooks, maybe also on jackup rigs. Well, in the district courts, I mean, the courts are also, under our precedent, supposed to give a lot of weight to the regulations, right, the DOL regulations? Yes, your honor, especially when there's an ambiguity in the statute, which I actually submit that the regulations go a little further than the statutory text does, but they still explain, for example, in 29 CFR 783.34, exactly the type of work that, even if it's performed on board vessels, is not seamen's work. And to a letter, that's exactly what my clients did. Counsel, the dissent in Adams, and I know it is a dissent, but it says, the panel's decision is novel. Research has not uncovered a single case in which a blue water crew member, and you know what that is, like the articled mariner plaintiff here, was held not to be an exempt seaman. Is it your position that your client is something other than a blue water crew member? Yes, your honor, I mean, he's a, well, he's a cook and a steward. That's a crew member. You have to eat if you're on the ship. You have to eat, yes, judge, whether or not you're on a ship, you have to eat. Well, on whatever vessel. Or on land, you have to eat. Yeah, you have to eat, and so that's your requirement to bring somebody there to fix the meals. Correct, your honor, but. So are you aware of a single case other than Adams? Because you said, oh, we don't, we may not need to remand because of Adams because it's not different. Are you aware of cases before Adams in which a blue water crew member was held not to be an exempt seaman? Your honor, and I may be misremembering the facts, but I believe that in the Dole versus Petroleum Treaters and Martin versus Bedell, there was at least a fact issue, but the court reasoned that blue water crew members might not be seamen in those two cases. So those are your two best cases, this Adams case and that other case? I mean, Judge, they, well, for example, in Martin versus Bedell, this court expressly held that the 20% rule applied to cooks on board vessels, and so I think that case is extremely good for us. I also think the Dole case is good, too, because it involved, again, cooks working on vessels who serviced offshore oil and gas rigs, and this court said were likely non-exempt under 13b6 of the act. I mean, is there any, so you think one option here is to remand, presumably with maybe an instruction or two for the district court to apply Adams and underlying case law and the regulations to this case. Is there any other option? Your Honor, I think the evidence in the record, if you'll permit me, we responded to the summary judgment motion by doing one thing which I think was very important. We highlighted the fact that on board Helix's vessel at any given time, there were typically 34, there were three crews essentially, the maritime crew, the well ops crew, and the galley crew. Maritime crew, which undeniably people who are traditional seamen in the ordinary sense of the word, mates, engineers, able-bodied seamen, ordinary seamen, bosons, there were about 34 of those people on board. There were about 91 oil field workers on board, and so you don't even need to get to the 20% rule. Well over half of the crew on board were oil field workers, tool pushers, roustabouts, derrickmans, and you had 12 galley workers who prepared food for all of these individuals. Unless there's a serious dispute about the facts from Helix, and that was picked one week but that was a typical kind of arrangement, unless there's a serious fact about the dispute about the facts or the law, I think the court could well render summary judgment dismissing exemption defense with prejudice. You want us to render? Of course I do, Judge, but the point is the evidence isn't... Don't you think that's a little out on a limb as Adams itself explained that the district court needs to determine how much time the cooks spent preparing food for the crew when they were not performing seamen's work, and how much time they spent preparing food for non-crew members, and you have to figure out whether it's a substantial amount. We can't say that as a matter of law right here today as we sit here on this record, can we? I think you can, Judge, I mean it doesn't... Tell me where in the record it just says that it's substantial amount. Well if you have 12 galley workers preparing meals for 125 people, 91 of whom are oil field workers, it should go without saying that the bulk of their effort goes into preparing food for oil field workers, not seamen. I don't know how to parse that anymore. I mean if you're preparing 125 meals or cooking for 125 people, you're obviously spending more time preparing meals for oil field workers than you are maritime workers. Were they performing other seamen's work in addition? No, Your Honor. Because in this other case, in all Adams, that was a question too. It was, Your Honor, in the last case on that fact is a little distinguishable because those folks, when they weren't cooking, they were actually otherwise engaged. These, the stewards and the cooks in this case, that was their full-time job was cooking. They weren't out chipping paint or tending lines or taking on goods or services or meeting a tender out somewhere. It's all they were doing was cooking or cleaning in the case of stewards. Anything else you want to point out? Your Honor, I would like to point out two things. One, this Court has held over and over again that cooking and cleaning is not, as it goes to what we were talking about, not inherently semen or non-semen's work because it depends on the context in which it's performed. And, you know, for, again, the rule is if cooks spend more than 20 percent of their time preparing food for workers who are not involved in the navigation of the vessel, then they're not semen. That's Martin v. Bedell, Adams v. Allcoast, Owens v. Sea River, Dole v. Petroleum Treaters. It's about as settled as it gets. You want this to be exactly the inquiry that the dissent in Adams said is unwieldy? Yes. Your Honor, if I... The majority must not have taken that view. Right, and I think it was a 13 to 2. Yeah, but, I mean, the majority didn't. They just said they give no guidance to the district court and it's the district court that's supposed to do this, and so it's true that they didn't give guidance to the district court. And so, but you want us to do it here as a court of appeals, go through that and determine it, and so... Your Honor, respectfully, I think this Court has already said in other cases that the 20 percent rule is the law, especially with respect to semen. I think there's, that's the Martin v. Bedell case, and then Owens v. Sea River, the Court pointed out in a footnote, I think, that they expressly approved of the holding in Martin with respect to the 20 percent rule and... 20 percent is a guideline, not a rule, isn't it? Your Honor, this Court has adopted it as the rule in both Owens and Martin v. Bedell. First Martin, then Owens. I don't think there's any wiggle room, at least based on this Court's jurisprudence, as it currently exists. The... And I do want to take a moment to address this argument that the rule is unworkable or unwieldy. That is simply not true, Your Honor. And I don't think I'm oversimplifying this, but if you're cooking for a hundred people, the majority of whom are not semen, then as a proposition of logic and common sense, you're spending more of your time cooking for non-semen. There's no dispute that that's exactly what happened in this case. I don't know whether or not, if you're making a batch of spaghetti, you still got to make the batch of spaghetti, whether you make a big batch or a small batch. I mean, I'm not sure incrementally the time is based upon the number of people. Your Honor, the other thing, that's true. The other thing I'd like to point out, though, this is an affirmative defense, not my burden to show anything. Helix made no effort in their composition of the crew or to argue that the cooks prepared more food for semen than non-semen or vice versa. They simply proceeded straight to criticizing the law as unworkable. And even if it was, they didn't carry their burden to show that they were entitled to summary judgment because they had offered no facts in support of its defense, especially in light of the cases we've talked about, Martin, Dole, Adams, Owens, those types of cases. For these reasons, we would ask the court to, at a minimum, reverse the district court's grant of summary judgment and remand the case. Thank you. Thank you, sir. Mr. Carter Crowe. Thank you, Your Honor. You've got to go to hell here, don't you? Your Honor, I frequently find myself in that situation, and maybe that's just my lot in life. But please, the court, I would like to mention very briefly why I think the summary judgment was proper, and then I'd like to pivot and turn to this 80-20 rule and the Encino Motor Cars case, because all the lawyers in this room deal in this area of the law a lot, and the Supreme Court came out with the Encino Motor Cars opinion a few years ago, but the Fifth Circuit has yet to really address the application of that case to the jurisprudence in this circuit, and that is desperately needed, and I think there's particular application there to this 80-20 regulation. So, first I'll say that summary judgment was proper because it was our burden to prove, and we did prove that McKnight and the other plaintiffs were employed subject to the authority, direction, and control of the master. There's no dispute about that. There's also no dispute that the steward services performed by the plaintiffs were rendered primarily as an aid to the operation of the vessel as a means of transportation, and that the vessel could not operate as a means of without the cooking and food service and cleaning that they performed. So, under the, I would say, under the Gale case from 1940 that's been the law in this circuit, it's been reaffirmed as good law, we definitely met the standard in Gale, and I know there may be some more questions about these other cases, but first let me say, with respect to the Encino Motor Cars case in 2018, which, again, has never really been addressed by the Fifth Circuit that I am aware of. It's been mentioned, it has been cited, but it's never really been explained how that case should impact the jurisprudence. So, let's talk a little bit about the statute and the regulations, which, of course, are the first places to start. The FLSA was passed in 1938. The first regulations were promulgated by the DOL in 1939. I think Mr. McKnight and the plaintiffs clearly met the seaman definition of those regulations at the time they were promulgated. Now, in 1948, years later, the DOL promulgated regulation 783.37, which is the 80-20 rule. I believe that loan regulation arose as a result of a Supreme Court opinion, which is the A.H. Phillips v. Walling case that said the FLSA exemption should be narrowly construed. So, that opinion came out in 45. This new regulation came out three years later in 48. Decisions prior to 48, like the Gale case in this circuit in 1940, they appear to use a fair reading construction, like is discussed in Encino, and they seem to adopt a primary duty rule for the exemption, which is the same rule that is generally applied in the majority of the courts. Courts then mentioned the need to construe the FLSA exemptions narrowly, and they adopt this 80-20 rule as a result of this new regulation. And that regulation, 80-20, it is consistent with a narrow construction viewpoint of these exemptions. Okay. Is the regulation, as you're saying, is consistent with the notion that the statute itself, the exemption in the statute employed as a seaman, needs to be narrowly construed? Are you suggesting then that the regulation shouldn't receive Chevron deference? Yes, I am. I'm suggesting that I think that regulation is inconsistent with a fair reading of the statute, and in fact does violence to the instead of giving a narrow construction to the exemption itself in the statute, there must be a fair reading of the exemption itself. And I think that... Will you do that on a panel, or do you think you need to go back again on bonk, Mr. Crow? I think there's an opinion by this court discussing this issue very recently. I think this, the Bonnevillian Marine Service opinion by Judge Engelhardt discusses this issue, and he talks about if there's been an intervening Supreme Court opinion that implicitly may impact prior opinions of this court, then this court, until the court addresses that a panel of this court. Well, I'll have to go back and reread what Judge Engelhardt wrote in that case. My understanding of our rule of orderliness is that an intervening Supreme Court decision has to explicitly overrule, so to speak, one of our decisions in order for a panel to feel that it's not bound by the rule of orderliness. Isn't that right? It has to be more than an implication. I think what this opinion says is, in basic terms, when a Fifth Circuit precedent, and this is talking about overruling a Fifth Circuit precedent, but when it says, when a Fifth Circuit precedent is implicitly overruled in a subsequent Supreme Court opinion, which establishes a rule of law inconsistent with that precedent, one situation in which this may naturally occur is where an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis. I think that's what Encino does here. It fundamentally changes the focus of this analysis, because I— But don't we have opinions, Adams being the prime example, that come after Encino motor cars that don't reach that conclusion? It does, but this opinion goes on to state that even if there are opinions like Adams that come out after Encino, if the Fifth Circuit has not addressed Encino, okay, the issues in Encino can still be raised. I'm familiar with Judge Englehart's opinion in that case, but I'm wondering, in Adams, I don't recall this right off the top of my head, did people make the Encino argument? They did not. Okay. Did none of the parties, did Amici make the argument, maybe? Well, I can say Encino may have been cited. There is no discussion in the Adams opinion. No, the opinion doesn't, but did the parties cite it? I think it may have been cited. I think it may have been cited. I wouldn't be surprised. I mean, Judge Jones's dissent from denial of en banc rehearing discusses Encino right at the outset. I'm just trying to understand the argument that because Encino says we should look at the exemptions in a different way, but the reg is still there, the 80-20 reg is there. It is still there. We would need a reason to feel that we're not bound by the reg. Yeah. It sounds like a Chevron. I mean, DOL promulgated the reg in interpretation of the statute, right? Yes. It's a Chevron argument. Yes, and thus, the issue in my view then is does the regulation do violence to the proper interpretation of the statute? You know, I get that. Maybe that argument has some legs to it. I'm just not sure we can do that in light of Adams. Well, in this recent opinion by Judge Iglehart, he talks about, he says, ours is the first Fifth Circuit panel to squarely address the issue at hand in light of this new Supreme Court authority. What was the, I just don't remember, what was the statute or the regulation at issue in that case? I've got that opinion. I'm sorry, I'm not exactly sure. I guess my point is it wasn't an FLSA. Okay, it was an FLSA. No, it was not. No, Your Honor. But it did say implicit, not. Implicit, yes. It says that, yes. Yeah, and he talks about if a Fifth Circuit panel has not squarely addressed the issue, then it can be addressed. So what would you, what would you want us to do here today? So, Your Honor, we're asking that the district court opinion be affirmed, because I do think that, I do think that this 80-20 analysis that is the driver in Martin and it is the driver in Allcoast is a clear, it's clearly driven by that 80-20 analysis. It is clearly driven by this narrow construction notion. Is that what Judge Hughes applied in this case? He applied the Gale case, which was the seminal case in this area since 1940, and it's been reaffirmed in the Sea River Maritime case, for example, and I think also in the Coffin v. Blessie case. It's been affirmed again and again as good law. It is also, frankly, much more consistent with the jurisprudence of other federal circuits than, than like the Seventh Circuit. Judge Posner's written an excellent opinion on the, the semen exemption, which is crystal clear and very different from the jurisprudence in this court, very, but very similar to the Gale. Do you know if there's been any circuit court that has followed this line on Encino and said that the regulation, the 80-20 regulation is really, goes beyond the statute? Of course, I'd be talking about that. Sure, sure. But I am not aware of that, but you have to. So the notion before that is in Martin, that is in Allcoast, is that the statute has a remedial purpose. And so we don't want this, we don't want there to be very many exempt people. We want to narrowly construe it to keep as many people from complying with the exemptions. And that drives, I mean, that's got to drive this analysis about how, even though the same duty of cleaning or preparing food has got to be parsed in terms of who is it going to be prepared for, a member of the vessel crew or a member of the marine crew. So it's the exact same duty. And the question is, who is it prepared for? I will tell you, that notion is not expressed in any of the other regs. Do you know whether, you weren't counsel in Adams, were you? No. Do you know whether cert has been sought in that case? I guess the time is still open. I think the time is still open in that case. And I don't know. But your honor, this notion that we have to look at who the food is prepared for, that is not consistent with the regulations. I don't think that is consistent with a fair construction of the statute itself  But Mr. Crow, even if I agree with you, that seems to be what Adams says has to happen. I agree. I agree. And I will say something else that gives me concern. And part of the reason, if this court does not affirm and it remands, I think we desperately, I think all the lawyers who practice in this area desperately need guidance from the Fifth Circuit on what Encino does. Because the earlier opinions from the Fifth Circuit that deal with the 80-20 rule, like the Sea River Maritime case, they say, well, it is a guideline, like you mentioned, Judge Elrod. So it's just a guideline. In the Sea River case, they just mention it in a footnote. They don't really, it's not really part of the core analysis of the court. But in Martin, and definitely in all courts, it stops looking like a guideline and starts looking like a hard and fast rule. Starts looking like it's being mechanically applied. And so... We've got a lot going on here. We've got our rule of orderliness. We've got Judge Engelhardt's guidelines. We've got our rule of orderliness on the Gale case and on the Adams case. We are going to have to figure out how to navigate that to synthesize it. Did you have something else you wanted to teach us or ask us about? Your Honor, I just note this from the Encino case that says, the narrow construction principle, which precedes the analysis in all these cases that the plaintiffs rely on, that principle relies on the flawed premise that the FLSA pursues its remedial purpose at all costs. But the FLSA has two dozen exemptions in 13b alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime pay requirement. We have thus no license but to give the exemption anything but a fair reading. So that, I believe, is a watershed ruling from the U.S. Supreme Court in terms of the proper construction of this statute. And we desperately need guidance on that point. Oh, I do have a question. Your opposing counsel, your friend on the other side, says that this case is just, all the facts are on one side and we don't even need to say there needs to be a trial because we could do it ourselves because you just do not put forth facts and the facts are pretty undisputed and so you automatically lose on the facts. Do you want to talk about that? Yes, thank you, Your Honor. So again, I think their argument arises from this notion that I mentioned of, the 80-20 rule is not a guideline, it's not part of the mix to be considered, but it must be mechanically applied, is what they say. But I think, which is flawed in my view. Would you lose if we apply the 80-20 mechanically on the situation of your clients? We should not, Your Honor, and the reason why we should not is because the plaintiffs in this case, their argument is that, well, all you need to look at is the number of people on board the vessel and that should dictate the outcome. That is not at all what the Allcoast case says or the Martin case says. They say you have to look at the incremental amount of time, which they did not put any evidence in the record on that point at all. Instead of saying, well, I'm cooking, this case is cooks or stewards? Well, Allcoast is all cooks. These people were claimed to be stewards, which they weren't the same as cooks, but they assisted in food preparation and then they had cleaning duties. What Mr. Hess is saying is that we look at the composition of the crew, we see far fewer seamen versus non-seamen, and so the only plausible, the only possible outcome is, you know, they're servicing, they're serving non-seamen substantially. And you're saying we shouldn't look at just the composition of the crew, we should look beyond that? I would definitely say, I would say the incremental amount of time, well, I would say that under the viewpoint of a traditional seamen analysis at the time the statute was passed, you had people who were acting as cooks and stewards who were performing those duties both for the marine and the non-marine crew and passengers. They were all considered to be seamen at the time the statute was passed. And I think that is really, especially under Encina, that is the relevant analysis. Well, I get that, but that kind of goes to your argument for rethinking precedent. Well, I think what Judge Elrod is asking is about the facts of this case and whether there are material fact disputes, even if the precedent is, assuming precedent is as it is. Well, if you assume precedent as it is, again, they've not put any, and they could have, I mean, they had a client who could have sworn an affidavit that says, talks about the incremental amount of time. They didn't do that. They didn't address the amount of time spent cleaning at all. Cleaning is probably the dominant duty of these workers. There's no evidence in the record by the plaintiff on that point. You're saying there are fact disputes. This is not appropriate, would not be appropriate for us. Even under Allcoast, even under Allcoast, there definitely would be factual disputes. And I think that there's other issues that have to be considered, and that is the merchant marine credentials of all these people, which definitely weighs on our side. I think other duties that they may have performed that are more marine in character, which you see as a part of the more traditional analysis of this circuit that factors all of these things in, that stuff is not in the record and would need to be addressed. Discovery over in this case, I assume it is, right? Was it? Well, there was limited discovery in this case. And there's no reason why, if we get remanded, if the court decides that's the right thing to do, why additional discovery couldn't be taken. Thank you, Your Honor. Thank you, sir. This being the only case to be argued with, we've reached a conclusion on our work here. Pardon me? Maybe rebuttal? I'm sorry. No problem. Yeah. I'm being too fast. Thank you, Your Honor. Go ahead. I do want to address this Encino Motor Car's argument that Mr. Crow spent a significant amount of time discussing and was not ever raised in the briefs. In fact, I just looked at his table of authorities and I don't see the case here. Do you think he should not have done that without having raised it? Are you asking us to let you address it or something? Your Honor, I'm happy to do it now on the record, but he didn't raise it in the briefs. That's a good point. If that's accurate, then that's a good point. And you're supposed to not argue out of your briefs unless you—yeah. So, thank you. Even if you were before us, could we do that in light of Adams? Your Honor, as to this exemption, the Encino Motor Car's ship has sailed. To your question, Judge Elrod, it was heavily litigated in the Adams case. I remember the Appellees raised it. The amici raised it. The majority didn't raise it. Only the dissent. Well, presumably— They didn't talk about it at all, the majority. That's true, Your Honor, but presumably the majority was—I know they were aware of the decision, and I'm sure it guided the opinion. The other issue is—this is all an interesting argument, but it's not even a close call in this case. Maybe the 80-20 rule is bad policy. Maybe the rule should be changed. Maybe we should do something different. Is it a rule? Maybe it's a guideline. Maybe it's a guideline. I think, though, this Court has expressly characterized it as a rule in Martin v. Bedell and then subsequently in the Coffin case. Did it have a—could it depart from the Gail if it—Gail and the C—is it C—the other case, it said it was a guideline. I'm just trying to trace our rule of orderliness back to the first case. Right, Your Honor. Could it depart from Gail? If that's controlling, then probably not. But, again, this isn't a situation where it's on the line like it was in Adams. The majority—I mean, we have to pick something as a cutoff. Is it 80-20? Is it 50? Is it 75? The overwhelming majority of people on board a Helix vessel are not maritime workers. So this is all fine, but even if you adopted a different cutoff, say 50 percent, the result wouldn't be any different. You're cleaning—you know, when we call a steward, we think of a—like a cruise ship, a cabin steward or something. Is a steward that's cleaning in this context cleaning the vessel itself all over the place in the common areas or only cleaning—I'm sorry, I guess I should know this, but I'm sorry I don't. Your Honor, typically they're cleaning state rooms and common areas like eating areas. The common areas, too. Is that a—is that a bigger portion? So they'd have to clean the common areas anyway, even if they were—do you see what I'm saying? Yes, Your Honor. No, if it's just rooms, then you might say, well, there's rooms of this many people versus this many people. But if it's common areas, it would have to be cleaned regardless of the number. True. I do want to say one thing, though, to your question and related to my response. There was no discovery in this case. Judge—the judge entered a form order at the inception of the case prohibiting all discovery as a matter of course. We asked for some limited discovery under Rule 56D. It was minimally granted. I got some crew manifest. And so these are all excellent fact issues that we should be able to develop through discovery, which we were prohibited from doing in the first place. That said, Mr. Crowe mentioned that I didn't offer any evidence about the exemption and related fact—excuse me? Incremental time. Right. This is not my burden. They bear the burden. They bear the burden. He says that, which I think is still good law, at least in part. And also, we talked a little bit in both my argument and Mr. Crowe's arguments about adopting a person's on board approach. That was exactly the criticism that was advanced by Allcoast in its petition for rehearing on Bonk. They said this person's on board—what Allcoast, what the opinion does is it requires us to look at the person's on board. That's what the amici said in support of the petition for rehearing on Bank, because that's what Allcoast did. It requires us to look to the people for whom you're cooking or cleaning to determine whether or not it's Siemens' work. One last point, Your Honor, related to all these issues. A fine place to start with analyzing an exemption is the statutory text. It says, employees employed as Siemen. If you were to go down the street to the 8th District Coast Guard headquarters and ask an enlisted person or an admiral there if a cook was a Siemen, he'd say no, he's not a Siemen. The dictionary, if you look up the word Siemen, it says a person whose business is navigating vessels. It doesn't include cooks. We've got— Historically, we've had a much broader understanding of who is a Siemen. Under the Jones Act, perhaps. But I think if you were to ask any merchant mariner, any Coast Guardsman, any naval officer if a cook was a Siemen, they'd say no, because they're not on the deck when the weather gets bad, you know, holding down the lines or making sure stuff doesn't go overboard. I'm a Siemen because I do that dangerous type work. And if we're going—and if the Supreme Court has taught us anything recently, it's that the text, the words, take on their ordinary meaning at the time when Congress passed the statute. Thank you. I don't have anything else. Thank you. Thank you, Mr. Bates. Your Honor, may I correct an inaccuracy? We did refer to the Encino case in our 28J letter that is in the record. Thank you. Thank you. This being the only case for the day, this Court will adjourn without date, and the panel will